# SUPREME COURT — APPELLATE DIVISION —
# FOURTH DEPARTMENT.

## May 1, 1918.

# TOWN OF WILMURT v. WRIGHT. .

### (171 N. Y. Supp. 230.) .

CONTEMPT—RELIEF—INTERESTED PARTIES—"CRIMINAL CONTEMPT."

Confinement for civil contempt in failing to pay the amount of a de-
falcation from a town, in the form of a judgment, was a matter between
the town and such defendant, and it was perfectly competent for them
to agree upon a settlement which would release the defendant, and an
attorney representing the town was not guilty of "criminal contempt"
under Judiciary Law (Consol. Laws, c. 30), § 750, in obtaining his release
in another court without telling that the first court had denied a release.

CONTEMPT—MONEYS UNDER CONTROL OF PARTY—CRIMINAL CONTEMPT.

Where town supervisor had defaulted, and the town obtained a simple
judgment against him, funds of the defendant in a bank were not under
the control of the court, and the town's attorney was not guilty of crimi-
nal contempt in resisting an order of the court to pay such money into
the hands of the county treasurer.

CONTEMPT—DISOBEDIENCE OF LAWFUL MANDATE—CRIMINAL CONTEMPT..

An order permitting one, confined as for civil contempt for failure to
pay a judgment, to renew a motion for release on payment of a certain
amount to the county treasurer and a certain amount to plaintiff's at-
torney, does not absolutely direct such mode of payment, and plaintiff's
attorney was not guilty of criminal contempt, under Judiciary Law, §
750, in entering into a settlement whereby he received all of such amount,
although there was a verbal direction that the whole sum should not be
paid to him.

CONTEMPT—CRIMINAL CONTEMPT—NATURE OF OFFENSE.

Criminal contempt is committed against the dignity and authority of
the court, and not the judge personally, and a mere personal grievance of .
a judge, however well founded, is not sufficient ground for criminal con-
tempt proceedings, under Judiciary Law, § 750, defining criminal con-
tempt.

APPEAL from Special Term, Oneida county.

In the matter of Charles D. Thomas, charged with criminal
contempt in the case of Town of Wilmurt v. William Wright.

From an order adjudging him guilty of criminal contempt, said
Thomas appeals.   Order reversed, and proceeding dismissed.

Argued before KRUSE, P. J., and FOOTE, LAMBERT, MER-
RELL, and DE ANGELIS, JJ.

*Charles D. Thomas,* of Herkimer, and *Purcell, Cullen &
Purcell,* of Watertown, for appellant.

*John H. Walrath,* of Syracuse (*District Attorney* of Onon-
daga county, designated by the court to prosecute), opposed.

KRUSE, P. J.:

The appellant is the attorney of record for the plaintiff in
the above-entitled action.   He has been convicted of criminal
contempt for an alleged willful disobedience of two orders made
in the action, to aid in the enforcement of a judgment recovered
by the plaintiff against the defendant.

The defendant was the former supervisor of the plaintiff
town.   He failed to pay over to the town moneys which had
come into his hands as supervisor belonging to the town.   The
action was brought to compel him to account and pay over the
same.   He defended the action unsuccessfully, and a judgment
was awarded against him amounting to upwards of $6,000.
The judgment required him to pay over the deficiency for
which judgment was awarded within a certain time.   Instead
of enforcing the judgment by execution, a motion was made
to punish him for a civil contempt in failing to pay over such
sum.   An order was granted to that effect, and the defendant
was imprisoned thereon.   The order directed that the defend-
ant be committed to the Herkimer county jail, there to remain
until he paid over to the plaintiff the sum of $6,000 and up-
wards, unless sooner discharged by the court.   He was taken
into custody by the sheriff on the 14th day of June, 1917, and

committed to the county jail. After he had been in prison a little over a month, he offered to voluntarily turn over to the town the sum of $2,535.88 in settlement of the judgment, being the balance in his account at the bank where he had deposited the town funds. The then supervisor of the town and the town board, after considering the proposition and concluding he had no other property and no other means, proposed that if he would turn the same over, to be applied upon the judgment, they would consent to his discharge from imprisonment under the order adjudging him guilty of contempt.

Thereupon his attorneys applied at Special Term for an order discharging him upon payment of said sum. His application was denied, but he was permitted to renew the motion upon payment of $30 costs, theretofore awarded by certain prior orders, and the delivery to the county treasurer of Herkimer county of his check for $1,908.42, and to the plaintiff's attorney another check of $627.45, costs in the action, payable to their order, respectively, upon the bank in which he had said credit balance, said checks to be delivered within twenty days after entry of the order and service of a copy, with notice of entry, upon plaintiff's attorney, and not otherwise.

The order was made on the 18th of August, 1917, and after resettlement was entered in the office of the clerk of Herkimer county on September 25, 1917. The plaintiff's attorney, the appellant herein, opposed the order, and insisted that, if such settlement was to be effective, the moneys should be paid to him. But the court refused to make the order in that form. The appellant was dissatisfied with the form of said order, and so stated to the defendant and his attorney. He suggested that the matter, being civil in its nature, could be settled between themselves, and proposed that, upon payment to him of $2,535.88, he would sign a stipulation of discontinuance and settlement of the contempt proceeding, and an order could be obtained from any justice releasing defendant.

Without reciting in detail the various conversations and nego-
tiations and interviews, it is enough to say that eventually the
money was paid by defendant to appellant, who thereupon
made a stipulation reciting that said moneys had been paid in
reduction of and applied upon the judgment, and stipulating
that an order might be granted at any Special Term within the
Fifth judicial district, without notice to him, the plaintiff's
attorney, discharging the defendant from further imprisonment
under and by virtue of the order of May 26th.    The appellant
himself, as attorney for the plaintiff, as the order recites, pre-
sented the stipulation at a Special Term not held by the judge
who made the order of August 18th, and an order was made
discharging the defendant.    The appellant did not disclose the
previous application and order of August 18th.

Thereupon the Supreme Court directed the district attorney
of Onondaga county, as he states in his affidavit, to apply, at a
Special Term to be held at a time therein stated, for an order
directing the appellant to show cause why he should not be
punished for criminal contempt for willful disobedience of the
lawful mandate of the Supreme Court, and for resistance will-
fully offered to a legal mandate of the Supreme Court, and for
willfully procuring disobedience and resistance to its lawful
mandate.    It does not appear where the Supreme Court was
held, or who the judge was who presided, which directed the
district attorney of Onondaga county to institute the proceed-
ing; but presumably it was the same justice who granted the
order to show cause, and who made the order committing the
appellant for contempt, denied his application for discharge,
and held the Special Term and made the order punishing the
defendant for criminal contempt.

Assuming that the court had power to punish the defendant
for contempt in failing to pay the amount of the defalcation, I
am unable to see why it was not perefctly competent for the
parties to agree upon the settlement, which would release the

defendant from imprisonment. He was not in custody on a conviction for criminal contempt, and the supervisor of the town had specifically stated to the appellant that, if he could get the $2,535.88 paid to him, the appellant, the town, and its officers, as well as nearly every resident of the town, would be perfectly willing that the defendant should be discharged. There is nothing in the record before us which tends to show in the least that the appellant did not have authority from the proper town officers to act for the town and receive the money for his client. The learned counsel for the prosecution frankly admitted upon the argument before us that he did not question the authority of the appellant to act for the town in that behalf.

It is true that the appellant stated that he had other claims against the town than the costs of the action, and it is evident, from the colloquy which took place in court, that the appellant regarded it to his advantage to have the moneys in his hands in getting his pay. But that was a matter wholly between the town and the appellant, and had no connection whatever with the matter before the court. Indeed, there is nothing to suggest that the officials of the town were not entirely willing that Thomas should take out his claim. Whether that would have been proper we do not know, and the question is not involved in this proceeding.

These were not moneys that had been paid into the court, or under the control of the court. The action was not brought to recover these specific funds. This was a mere credit balance, and, even if they had been moneys, the title to which was in the town, the town officers had a perfect right to receive the same. I am not aware that the county treasurer had any authority to receive them. Nothing is pointed out which gave him such right, and if the provision in the order for paying the moneys to him is to be regarded in the nature of a payment into court, I think it was without authority, and the town officers, as well as the attorney for the town. were warranted in resisting such

payment to the county treasurer. If there had been a controversy between town officers and the appellant over the possession of the moneys, there might have been more reason for directing payment into court of the money, and thus avoid keeping the defendant longer in jail on account of a controversy which did not concern him or in any way relate to the enforcement of the judgment against him.

It appears by the affidavits contained in the record that, during the argument at Special Term, which resulted in the order of August 18th, the presiding justice asked the appellant whether it would help matters if the moneys were paid into court. The appellant replied that it would not, as he would have trouble in getting it out; that the justice then stated that there were two things that he was not interested in: One was the release of defendant from jail, because he believes defendant was where he ought to be, and the other was the payment of appellant's fees for other matters outside of the lawsuit in question. It may be that the defendant should have been in prison on a conviction for a crime; but he was not, and if the plaintiff was willing that he should be released from imprisonment under an order made to enforce a judgment in its favor, I do not see why that should not be done, and, as regards the appellant's claims against the town, that was in no way involved in the proceeding before the court. The attorney was responsible to his client for the money which he had been authorized to receive, and it was not for the judge to say that the attorney should not receive the moneys upon the judgment which he had been the means of recovering for the town, in the absence of anything to show that the town officers were objecting, or that the payment of the moneys to the appellant was unsafe, or for any other reason improper.

But, giving the order of August 18, 1917, the utmost latitude to uphold the conviction of the appellant for contempt, I think he did not violate any of its provisions in receiving the money.

It is true that the order convicting the appellant for contempt recites that the court made a verbal direction that the whole sum of $2,535.88 should not be paid to the appellant; but there is no such provision in the order of August 18th. If that had been the decision of the court, and before it could have been reduced to writing and entered there had been a violation of the direction, a different question would be presented. But that is not so. In fact, there is no provision in the order of August 18th which absolutely directs the defendant to pay these moneys. It only provides for payment as a condition to renew the application for his discharge, as therein stated. Neither he, nor any one else, is directed not to pay to the appellant these moneys, nor is the appellant enjoined from receiving them.

While the order convicting the defendant of contempt and committing him to prison required that he should remain there until he paid the full sum for which judgment was recovered against him, unless he was sooner discharged by the court, it surely was not intended that the defendant might not compromise the matter and procure his release from imprisonment. Much less did the order of August 18th have such an effect. As has been pointed out, the defendant was not imprisoned in any criminal proceeding. It was merely to collect a judgment like a body execution. Indeed, I think the sheriff would have been entirely justified in releasing the defendant without a court order, if the plaintiff, at whose instance he was imprisoned, desired to consent thereto. At least I think he would have incurred no personal liability in so doing to the plaintiff, and I am not aware of any law which would have permitted a court to punish him criminally, by contempt proceeding or otherwise, if he had done so.

It is said that the appellant should have informed the court, to which he presented the stipulation for the discontinuance of the contempt proceedings and discharge of the defendant, of the previous application and order of August 18th. That may be so; but that was not a disobedience of the order which the

appellant was convicted of violating. As before stated, he was acting for the town, as the order of discontinuance recites, and no one besides himself and the town had any interest in the money collected by him.

I have no doubt the learned justice who made the orders regarded the act of the appellant in receiving the money as a defiance of the authority of the Supreme Court and its lawful mandate, and not a mere act of discourtesy to the judge, as seems to be suggested by what is stated in one of the affidavits. Of course, a mere personal grievance of a judge, however well founded, is not sufficient ground for criminal contempt proceedings. The offense is against the dignity and authority of the court, and not the judge personally. As before stated, Wright, the defendant in the action, was not imprisoned on a conviction for criminal contempt, but for civil contempt. It was a civil remedy, for the benefit of the party in whose favor the judgment was obtained, and not to punish a criminal offense. Under these circumstances, I am unable to see how the appellant could properly be adjudged guilty of criminal contempt in receiving the money and obtaining the order of discontinuance, which released the defendant; all the interested parties having agreed thereto.

The only provision of law for convicting a person for criminal contempt is contained in section 750 of the Judiciary Law (Consolidated Laws, chap. 30; Laws of 1909, chap. 35). That section, so far as applicable here, provides:

"A court of record has power to punish for a criminal contempt, a person guilty of either of the following acts, and no others:

\* \* \* \* \* \* \*

" 3. Willful disobedience of its lawful mandate.

" 4. Resistance willfully offered to its lawful mandate."

I think the appellant violated neither of these provisions. The order should therefore be reversed, and the proceeding dismissed. All concur.